UNITED STATES DISTRICT COURT                    JURY TRIAL REQUESTED

SOUTHERN DISTRICT NEW YORK                  -------CIV--------------(------)  (------)

---------------------------------------------------------------

HERMAN  CRESPO,

          PLAINTIFF,

RECEIVED
JAN 2 8 2016
PRO SE OFFICE

16CV0708

      -AGAINST-

New York City Police Commanding Officer

10 Precinct,Warrant Squad, et.al

         Defendants

---------------------------------------------------------------------------

Det.Geraldo River,arresting,investigating Detective,et al

10 PRECINCT, WARRANT SQUAD, NEW YORK CITY POLICE DEPARTMENT,

         DEFENDANT,

----------------------------------------------------------------------------------------------

DET. JOHN DOE, ASSISTED ARREST

10th Precinct,Warrant  Squad, New York City Police Department,

         DEFENDANT,

DET. JOHN DOE,ASSISTED ARREST,

10TH PRECINCT,WARRANT SQUAD,NEW YORK CITY POLICE DEPARTMENT

UNITED STATES DISTRICT SOUTHERN DISTRICT, NEW YORK

HERMAN CRESPO,

      PLAINTIFF


    -AGAINST-


DEPARTMENT OF CORRECTIONS,

OF City and State of New  York

==================================

UNITED STATES DISTRICT SOUTHERN DISTRICT, NEW YORK

---

---

HERMAN CRESPO,

     PLAINTIFF


   -AGAINST-


DEPARTMENT OF CORRECTIONS,

OF City and State of New York

==================================

DEFENDANT

DISTRICT ATTORNEY,CYRUS VANCE,ET.AL.

NEW YORK DISTRICT ATTORNEY ET.AL.

DEFENDANT,

LAUREN PERRY,ET.AL.

DEFENDANT,

JOHN DOE,ALL THE ASSIST.DISTRICT ATTORNEY s

THAT HAD ANYTHING TO DO WITH THE

PRESENTING TO THE ARREST OF PLAINTIFF

ON INDICTMENT 1562/11,ET.AL.

DEFENDANTS,

REENEE A. WHITE, SUPREME COURT JUDGE,

PART 62, PRE-TRIAL JUDGE,NEW YORK STATE,

AT COUNTY OF NEW YORK SUPREME COURT

DEFENDANT,

JUAN MERCHAN,TRIAL  JUDGE ON

INDICTMENT NO.1562/11

DEFENDANT,

ALL DEFENDANTS SUED OFFICAL CAPICITY

AND UNOFFICAL CAPICITY,

For he had been awaiting for a friend of his,while he dosed off watching an Old Yankeeagraphy

Game,so there wasn't any threat of him having a weapon or anything that would impede him  for

Stating the truth that he had a warrant for his arrest,also his fellow officers bardged in the other

Rooms to check and see if there was anyone else in the apartment. The plaintiff was understa nding

That he would be back at his home around 10 O'Clock that evening,this was what had been stated by

Detective of record for the warrant and for what came to be know as the investigating detective.How-

Ever,the detective had already investigated this case as the lead detective on this case,he had arrested

Someone else on anumerous amount of arrest that had been assigned to him for many burglaries that

Had been ongoing around the Chelsea area as had been stated at trial one whom had been arrested –

Subsequent to his testimony during trial. He also stated that the alledge bloody crowbar with my dna

On it had  been used  for the purpose of this burglary,moreover this  case was 4and half years old upon

The plaintiff being arrested for alledgely being accused for an alledge drope of some brown sourse or

Something to that effect. Based on this the  plaintiff had been incarncerated approximately 17 and half

Months after being acquitted of the only charge, had the lower court made further inqury as to the –

Indictment also the trial court the need for the trial would have  been totally unnecessary and the –

Need for the unjustly withholding him in control setting and depriving him of his right to be free and

Being subjected to cruel unusual punishment would have not deem necessary and again his just and

Wanted relief would have been had.Upon information and belief and facts surrounding the instant

Case would have lead a judge of reasonable logic,that I was not guilty of what I was accused of.

   The Superiors whom are there commanding officers are equally liable for lack of properly training

There subbornates in the proper manner to make an arrest and obtain suffice evidence instead of all

This circumstancial evidence that doesn't even prove that I was even around the given area.


   The plaintiff was denied his rights consistent with cruel and unusual punishment,right  to be free

In the pursuit of his happiness,to add insult he learned that the mother of his children was dying from

For he had been awaiting for a friend of his,while he dosed off watching an Old Yankeeagraphy
Game,so there wasn't any threat of him having a weapon or anything that would impede him  for
Stating the truth that he had a warrant for his arrest,also his fellow officers bardged in the other
Rooms to check and see if there was anyone else in the apartment. The plaintiff was understa nding
That he would be back at his home around 10 O'Clock that evening,this was what had been stated by
Detective of record for the warrant and for what came to be know as the investigating detective.How-
Ever,the detective had already investigated this case as the lead detective on this case,he had arrested
Someone else on anumerous amount of arrest that had been assigned to him for many burglaries that
Had been ongoing around the Chelsea area as had been stated at trial one whom had been arrested –
Subsequent to his testimony during trial. He also stated that the alledge bloody crowbar with my dna
On it had  been used  for the purpose of this burglary,moreover this  case was 4and half years old upon
The plaintiff being arrested for alledgely being accused for an alledge drope of some brown sourse or
Something to that effect. Based on this the  plaintiff had been incarncerated approximately 17 and half
Months after being acquitted of the only charge, had the lower court made further inqury as to the –
Indictment also the trial court the need for the trial would have  been totally unnecessary and the –
Need for the unjustly withholding him in control setting and depriving him of his right to be free and
Being subjected to cruel unusual punishment would have not deem necessary and again his just and
Wanted relief would have been had.Upon information and belief and facts surrounding the instant
Case would have lead a judge of reasonable logic,that I was not guilty of what I was accused of.

The Superiors whom are there commanding officers are equally liable for lack of properly training
There subbornates in the proper manner to make an arrest and obtain suffice evidence instead of all
This circumstancial evidence that doesn't even prove that I was even around the given area.


The plaintiff was denied his rights consistent with cruel and unusual punishment,right  to be free
In the pursuit of his happiness,to add insult he learned that the mother of his children was dying from

Defendants, NEW YORK CITY COMMAANDING OFFICE

Are   being sue for because they are in charge of securing that their New York City police officers are
properly trained on how to  serve  warrant,also the officers are to secure that judge sign and being that
the detective in charge was the investigating officer in,the warrant officer he had a responsibility to
secure that HE FOLLOWED POLICY AND PROCEDURE OF NEW YOK CITY POLICE DEPARTMENT- THE FACT
that both the police detective as well as the commanding officer proves that the detective and the
serving of warrant was executed on less that probable cause.NOTE tha following which also apply tto all
parties such as the hearing judge ReeNee A White,part 62 The DistricT ASSISTANTS WHOM HANDLED
THE INDICTMENT FOR THE ON GOING RATIONAL POINTS ;

The people stated in their Bill Of Particulars,        that they had crowbar,also that it had the plaintiffs,
when the DNA expert stated that the dna was never tested for Blood, also that DNA Florensic
department of the state of New York stated this at trial and during all pretrial hearings as well as
apperances; Notwithstanding this the alledged crowbar was tested for DNA, Report from DNA expert
stated that there had been insufficient DNA to determine as to whom the DNA belonged: Moreover,the
people knew th at the crowbar would not be available  because the Police Department destroys all
evidence that it doesn't use after a year that it had been stored in /at evidence room as per trial
testimony of evidence property officer

The District attorney,s whom worked on this case proved and testify that at arraignment by saying an
indictment was voted on August 15,2011 based on fact that a bloody crowbar was an influence upon the
jury and the minutes of the Grand Jury presentation as receive by the plaintiff are bear of this also I
believe that if this premise is true that this indictment should have never reflected that unseen words
above stated by A.D.A I  believe  this matter should have been dismissed Moreover, I was never seen at
the Crime scene, no can place me there at the date the crime had been committed from the 23 to the 24
Of either March/and/or April 23rd   hour of  10 O'clock of the 24/2007
See trial minutes arraignment minutes,also testimoneny of trial minutes dna expert testimony.
The defendant obviously was being falsely accuse served 17 ½  months at the Tombs and Riker's Islan
On case that he was held on  less than probable cause.Judge with all due respect if you sitting at chair
your office your hand may sweat several hours past and the next day someone is found at your table
does this mean you with impeccable character Are you guilty of committing this crime

This is a LAW SUIT against all the foremention caption defendant, for false arrest,malicous prosecution,and abuse of process for case no.1562/11 for an alledged Burglary that was commited at 23st between 7th and 8th Avenue,at 344 West 23,this was a commercial store(99) store,etc.

This crime was committed 4 ½ years prior,to the plaintiff,being falsely accused of having committed the crime.see exhibit A,    (CERTIFICATE OF DISPOSITION OF ACQUITTAL)

NOTE: The plaintiff was held from original arrest date 8/22,/11 until his acquittal date of the January 28,2011 a total of 17 ½ months before he was acquittal,for the charge of Burglary in the 2d. 140.20 of the Penal Law, of which was consistent with infringdement on the United States Constitutional Amendments 1st , 4th ,5 ,6th 8th 11th also his New York State Constitutional Laws section Article 1—11, Due process of law,right to be free in the prosuit of happiness,cruel and ununusal punishment,deprivation of human rights as stated in United States Constitutions as well as State Constitution.

## STATEMENT OF FACTS, AS STATED BY THE PEOPLE

On or about March 15,2011 a DNA Hit was made for the formention cited above committed, the plaintiff was accused,alledgedly the an indictment was voted by the Grand Jury of the State Of New York,Paintiff was issue an warrant on same date,upon information and belief the people wrongfully accused the plaintiff and false arrest insued 5 months later on August 22,2011 on an unshown warrant also false statements given to plaintiff, that he had missed a court date, of an unrelated date of docket. NYC 003442 of which the plaintiff had been religiously attending all courts since his accusation of those charges on January 3,2011, NOTE; The people for all pratical purpose knew the whereabouts of the plaintiff He had been living 631 East 220th street between White Plains Road and Carpentier Avenues for approximately two (2) years

The plaintiff never knew what his original charges were because of the lies of officer/Det.Geraldo River, whom was the assigned investigator for the Burglaries that were committed in the Chelsea region at the time of 2007,and got the collar for the arrest based on nothing less than probable cause.

The defendant was arrested based on forementioned was not hand cuffed excorted out of building based on the fact that he missed court date,not the actual charges of Burglary in 2d Degree,140.20 of P.L., He was embarrassed by the fact obviously knew that he was arrested for the det.s assisted plaintiff by holding his arms while I was take out of building,people on the stoop of building and friends also people looking out of window because he was excorted around the corner of Carpenter Avenue and half way down the block,then placed by holding his head and put into car, two defendant were on each side of him while excorting him from building and sitting on each side of him, also when plaintiff turn around hesaw many of his acqaintances,friends and neighbors looking, he was very much hurt and embarrassed, this caused him to lose his apartment,that he would never see again.

The district attorney office and trial District ATTORNEY DIRECTLY AND
DELIBERATLEY LYED IN THEIRE BILL OF PARTICULARS hereon BOP

The district attorney Lauren Perry,lyed  on the bill of  pariculars

1) BASED UPON THE FACT THAT SHE STATED THAT THEY HAD A VEDIEO OF THE PLAINTIFF
ALLDGELY COMMITING THE CRIME,
2) THE PEOPLE LYED STATEING THAT THE HAD A BLOODY CROWBAR WITH HIS DNA ON IT
3) THE PEOPLE STATED THAT THE HAD A CROWBAR,note the dna stated that their had
been less that enough dna a to secure that it was anybodys dna,further note that the
crowbar had been destroyed because the police destroy the evidence of the crowbar or
any evidence they have in their evidence that has been left in their storage for over 1
year.the district  attorney bolstered their evidence stating that their had been blood on
the crowbar and became unsworn reasoning ;Both the pre trial judge allowed the use of
the word blood also the trial judge allowed to be use during the trial also summation
dispite the fact that plaintiff pro se took exception to their rulings, and perceived that
the judges respectively the pre trial judge as well as trial judge Merchan,;
4) The District attorney did not have suffice indicia to even arrest the plaintiff to get a
warrant and or issuance of same,notwithstanding this allowed evidence that were not in
evidence this prove their bianess toward the plaintiff,also wish and desire to stremeline
the case for the District attorney office
5) Allowing evidence not in the record secures that there was unfair play and further
display of the the cruel and unusual treatment of which cause the plainf
6) Iff to further stay incarncerated and denial of  STATE AND UNITED STATES
CONSTITUTIONS
7) The need for closer scrutney by the pretrial judge would have nullify this case for ever
going  to trial and denial of the plaintiff to be incarncerated on what is deem less than
probable cause also the trial judge stated that it wouldn't entertain any motions of what
should have been addressed a pre trial judgements this too was bias and totally against
the Spirit of Justice
8) Further  more the people had no witnees nor was there anyone see the plaintiff either
at crime seen with crowbar and whom is to say that the crowbar had been the
instrument that had been used by the plaintiff, barring the facts of any direct evidence
linking the plaintiff to this case,both judges tried to secure a conviction and cared
nothing other the to use their office to work the very bench to further violate the spirit
of the letter of the law,

9) The facts that cannon law and the Barr associations depicts the judge is to secure that the defendants should be fair an impartial also to uphold the spirit of the laws binds them to both state and united states constitutions the decoruim of the court,more assigning lawyers that would give the defendant a zealous attorney to at least he could have fair representation,Here the assignment of Hershal H.Katz whom the plaintiff only saw at the arraignment date and never talked or visited him as to what was transpiring on the instant case made his motions with not ever visiting or excepting his calls and this was on going to December 18, 2011,The plaintiff requested if he defendant could go pro se, He was assigned Robert Weinstein whom stated that because "your not a paining custom that any motions you wanted that the plaintiff would have to submit himself also he said that he was not going to do anything other than to get a copp out for him.At one point the plaintiff was discuss something  Weinstein,Weinstein waited till the court clerk was about to enter the back to say why did I spit at him,this was a direct act so that he would be taken off the case. I told the court that I never spited or ever disrespected Weinstein in or out of the courtroom, and stated that he was an alcoholic also that his desire was to represent himself

10) Had the plaintiff never represented himself he believe that he would still be in jail and he would have lost his case instead he was acquitted by a group of his peers that saw that the district attorney was not proving their case note that approximately after the second day of trial one of the jury's was admonished and dismiss from the jury for she had violate the fact that she shouldn't speak to anyone about the case,she had gone to a beauty salon while doing her hair she spoke about the case with the butician she was admonished and drown off the grand jury not before stating that she had already formulated that the district attorney was and hhad not proven her case also she believed I was innocent.

THIS IS A TRUE ACCOUNT OF THE CIRCUMSTANCES

THAT LEAD TO THE ARREST ON INDICTMENT # 1562/11

BURGLARY 2ND  DEGREE ;

On August 21,2011 The Plaintiff, Herman  Crespo had awaken at approximately two thirty in

The afternoon, he had received a phone call from one of his lady friends,whom he had asked to

Come over so that thry could havea good time together,since he had been drinking the night be-

Fore he decided to make a drink,that he could take the edges off what he believed was a slite

Hangover. He mixed a Bacardi Grape with Orange Juice with ice,after he had taken a bath and brush

His teeth. He lit a ciggarett and had put the Yes netwok on cable T.V. where he started watching

An old New York Yankee game the programe was called Yankeeagraphy which quite obviously was

An old Yankee game

The plaintiff had apparently dose off where he had awoken to a an abrupt knocking on the door,

As he went to open the door,he believ ed that it was his lady friend so he didn't look throught the peep

Hole.To his surprise there were three men at the door,upon opening the door the three men rush inside

Two of which started running toward the rooms behind me I shouted out laud that my neighbors could

Hear for I knew not whom these me were.One man ,the shorter of the three stated did I have a court

Date that  I had missed   or dis I have a case pending? Something to that effect, I settled down now  for

I believed that they were police officers the shorter of the three officers (detectives was later to be –

To me as the detective incharge of the case and investigating detective,also the one that had gotten  the

Credit for the arrest) .  I stated that I did have a case pending but, that the case was not to be held for

A hearing date of September 6,2011, as I had ststed this to him I reached toward the refrigeration door

Cancer.

Please be advise that I sti'll working as to the Department of Corrections of the state, and city of New York

I proceeding pro-se on the instant case,

I seek damages in the Amount 2.70 million Dollars for false Arrest & unwarranted Detention of 17½ Monthss

incarcerotio

Herman Crespo
Herman Crespo
Apt 527
760 E. 183 St
Bronx, NY. 10460



**The New York Times**

This copy is for your personal, noncommercial use only. You can order presentation-ready copies for distribution to your colleagues, clients or customers here or use the "Reprints" tool that appears next to any article. Visit www.nytreprints.com for samples and additional information. Order a reprint of this article now.

August 18, 2009

# DNA Evidence Can Be Fabricated, Scientists Show

By ANDREW POLLACK

Scientists in Israel have demonstrated that it is possible to fabricate DNA evidence, undermining the credibility of what has been considered the gold standard of proof in criminal cases.

The scientists fabricated blood and saliva samples containing DNA from a person other than the donor of the blood and saliva. They also showed that if they had access to a DNA profile in a database, they could construct a sample of DNA to match that profile without obtaining any tissue from that person.

"You can just engineer a crime scene," said Dan Frumkin, lead author of the paper, which has been published online by the journal Forensic Science International: Genetics. "Any biology undergraduate could perform this."

Dr. Frumkin is a founder of Nucleix, a company based in Tel Aviv that has developed a test to distinguish real DNA samples from fake ones that it hopes to sell to forensics laboratories.

The planting of fabricated DNA evidence at a crime scene is only one implication of the findings. A potential invasion of personal privacy is another.

Using some of the same techniques, it may be possible to scavenge anyone's DNA from a discarded drinking cup or cigarette butt and turn it into a saliva sample that could be submitted to a genetic testing company that measures ancestry or the risk of getting various diseases. Celebrities might have to fear "genetic paparazzi," said Gail H. Javitt of the Genetics and Public Policy Center at Johns Hopkins University.

Tania Simoncelli, science adviser to the American Civil Liberties Union, said the findings were worrisome.

"DNA is a lot easier to plant at a crime scene than fingerprints," she said. "We're creating a criminal justice system that is increasingly relying on this technology."

John M. Butler, leader of the human identity testing project at the National Institute of Standards and Technology, said he was "impressed at how well they were able to fabricate the fake DNA profiles." However, he added, "I think your average criminal wouldn't be able to do something like that."

The scientists fabricated DNA samples two ways. One required a real, if tiny, DNA sample, perhaps from a strand of hair or drinking cup. They amplified the tiny sample into a large quantity of DNA using a standard technique called whole genome amplification.



**OFFICE OF CHIEF MEDICAL EXAMINER**
Charles S. Hirsch, M.D., *Chief Medical Examiner*

**DEPARTMENT OF FORENSIC BIOLOGY**
Mechthild Prinz, Ph.D., *Director*
Howard J. Baum, Ph.D., *Deputy Director*
421 East 26th Street, New York, NY 10016
Tel:  212.323.1200 · Fax:  212.323.1590 · E-mail: DNALab@ocme.nyc.gov

September 9, 2007

## LABORATORY REPORT

**COMPLAINANT:** Mamadou Diakhate              **LAB NO:** FB07-01010

**COMPLAINT NO:** 2007-010-01955

### SUMMARY OF RESULTS:

PCR DNA typing performed on the following samples indicates the presence of the same male DNA profile that is suitable for inclusion in DNA databases:

- swab "E2" from "inside on wall by point of entry near broken glass"
- swab "E3" from "piece of broken glass (on inside of)"

This combination of DNA alleles would, at a minimum, be expected to be found in approximately:[1]

      1 in greater than 1 trillion people

DNA extraction was performed on the following sample, but an insufficient amount of DNA was present for the DNA testing listed in this report:

- swab "E1" from "crow/pry bar"

**Further analysis could be done upon submission of a blood or saliva sample from a suspect and/or victim/ elimination sample.  Further analysis will require approximately 30 days.**

**The DNA results in this case do not match any previous PCR (STR) DNA cases to date.**

**The DNA results in this case will be entered into the OCME local DNA databank.  The DNA results will be entered into the National Combined DNA Index System (CODIS).**

---

1. OCME STR database, National Research Council (1996) The Evaluation of Forensic DNA Evidence, Natl.  Acad.  Press, Washington DC.



New York State Police
Forensic Investigation Center
DNA Databank Unit
1220 Washington Avenue
Albany, New York 12226-3000
Phone: (518) 457-1208
Fax: (518) 457-2823

New York State
Division of Criminal Justice Services
Office of Forensic Services
4 Tower Place
Albany, New York 12203-3702
Phone: (518) 457-1901
Fax: (518) 457-9384

March 25, 2011

Dr. Mechthild Prinz
Director of Forensic Biology
Department of Forensic Biology
Office of Chief Medical Examiner
421 E. 26th Street
New York, NY   10016

Dear Dr. Prinz:

A search of the State DNA Index System (SDIS) resulted in a match between the City of New York, Office of the Chief Medical Examiner specimen number 07-01010-005-BRGL-B and convicted offender specimen number 10569284A.

The purpose of this report is to inform you of a possible investigative lead related to this specimen. The convicted offender information is as follows:

Name:                HERMAN CRESPO
Aliases:             HERMAN LASALLE; HERMAN ROSODO
NYSID#:              3112210Y
Current Location:    UNKNOWN

A copy of this letter should be provided to the submitting agency for appropriate review in this investigative matter. If legal action is anticipated, based on this information, it is strongly recommended that a new DNA specimen be collected from the named individual. This new DNA specimen should then be submitted to your laboratory for appropriate confirmatory analysis.

If you require further assistance, please contact Erin Cavanaugh at ███████████████. If you require certification documents for this match, please e-mail your request to ███████████████████ or fax a copy of your request to ███████████. A minimum of 24 to 48 hours notification is required for certifications to allow the Office of Forensic Services to retrieve the necessary documentation.

Very truly yours,

Gina L. Bianchi
Deputy Commissioner and Counsel

**REQUEST FOR
LABORATORY EXAMINATION**
PD 521-161 (Rev. 9-89)-95

**POLICE DEPARTMENT
CITY OF NEW YORK**

BioTRACKS #0700625

(See instructions on last copy)

| INVESTIGATING/ARRESTING OFFICER (Print) | | TAX REG. No. | COMMAND | COMP./CASE No. | PCT. | PROP. CLK. INV. No. |
|---|---|---|---|---|---|---|
| Rank PO | Name (Surname, First, M.I.) Serrano Raymond L | | 010 | 1955/ | 010 | N656 005 |

OFFENSES
Burglary

COMPLAINANT (Name)
Diakhate Mamadou

DATE/TIME OF OCCURRENCE
4/18-07

ADDRESS OF OCCURRENCE
244 W 23rd St, NY, NY

TYPE OF PREMISES

DEFENDANT/SUSPECT

| Name | Arrest No. | Pct. | NYSID No. | Sex | Color | Age | Height | Weight |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

DETAILS OF OFFENSE   (Include Relationship of Evidence to Case. When necessary, include physical description of complainant.)

C/V States upon opening store he discovered his storefront window was Broken and Items from the Immediate Area of Window were vandal. Crow bar was discovered on scene As well as blood.

EVIDENCE SUBMITTED

| Item No. | QTY | Description | Ident. Marks | Where Obtained |
|---|---|---|---|---|
| E1 | 01 | Swab of Poss DNA | | From Crow/Pry Bar |
| E2 | 01 | Swab of Poss Blood | | Inside on wall by Point of Entry near Broken Glass. |
| E3 | 01 | Swab of Poss Blood | | From piece of broken Glass (on Inside of) |

TYPE EXAMINATION REQUESTED  (Purpose of Request)

Bio Tracks.                FBOA 01010

HAS OTHER EVIDENCE IN THIS CASE BEEN PREVIOUSLY SUBMITTED?  ☐ Yes  ☒ No
Check section and give case no., if known.

☐ Lab Case No. _____  ☐ Crime Scene No. _____  ☐ Ballistics Unit No. _____  ☐ Bomb Squad No. _____

IS THERE A PREVIOUS CASE WHERE EVIDENCE CAN BE COMPARED WITH THIS CASE?

☐ Yes  ☒ No   If Yes, Complaint No. _____  Pct. _____  Lab. Number(s) _____

REMARKS: (Any Information That May Aid in Analysis)
In Regards to ECT Run# 07-R-049
Finder of Property PO R.bustello
Fax#

Evidence Given to
PO Miyamoto. Tax#927214
PO Serrano  Tax#929158  }10%

| MEMBER SUBMITTING EVIDENCE | | | |
|---|---|---|---|
| Rank PO | Name R.bustello A | Tax Reg. No. | Cmd. MSECT |

LABORATORY USE ONLY

☐ CRIM  ☐ ARSON  ☒ SER
☐ DOC  ☐ BAL  ☐ IDTU

Laboratory No. 07T1728   Date 5-1-07   Received by: PO
EU07-M1825              5/30/07    a Kat  627

WHITE AND PINK COPIES — POLICE LABORATORY        BLUE COPY — PRECINCT FILE COPY

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF NEW YORK - CRIMINAL TERM - PART 62
 2   - - - - - - - - - - - - - - - - - - - - - -x
     THE PEOPLE OF THE STATE OF NEW YORK,
 3
            -against-                    Indictment No.:
 4                                       1562/2011

 5   HERMAN CRESPO,                      Proceeding

 6                   Defendant.
     - - - - - - - - - - - - - - - - - - - - - -x
 7
                        100 Centre Street
 8                      New York, New York 10013

 9                      February 28, 2012

10   B E F O R E:

11        THE HONORABLE RENEE A. WHITE, Judge

12   A P P E A R A N C E S:

13   FOR MS. FROMKIN:

14        OFFICE OF CYRUS R. VANCE, JR.
          District Attorney New York County
15        One Hogan Place
          New York, New York 10013
16
          BY:  JENNIFER FROMKIN, ESQ.
17
     FOR THE DEFENDANT:
18
          ROBERT WEINSTEIN, ESQ.
19        Attorneys for Defendant
          350 Broadway
20        New York, New York 10007

21

22

23

24

25
```

*Ivelisse Rodriguez, Senior Court Reporter*

PROCEEDING

2

1   THE CLERK:  Calendar 20, 1562/2011, Herman Crespo.

2   Appearance for the record.

3   MR. WEINSTEIN:  Robert Weinstein, 350 Broadway,

4   New York New York.  Good afternoon, your Honor.

5   THE COURT:  Good afternoon.

6   THE COURT OFFICER:  One coming out.

7   THE COURT:  All right.  Mr. Crespo is in the

8   courtroom.  I've rendered a decision on the motions to

9   dismiss, and it's denied.

10   I'm giving the defendant an unstapled copy of the

11   decision.  I'm giving the People a copy.  Unfortunately, I

12   don't have another copy for Mr. Weinstein.  I will have to

13   make you a copy.

14   MR. WEINSTEIN:  Thank you, Judge.

15   THE COURT:  We'll fax it to you if you give us

16   your fax number.  The motions are denied.  Now, do you wish

17   to set a trial date?

18   THE DEFENDANT:  Excuse me, may I speak?

19   THE COURT:  I'll give you.  You have a copy of the

20   decision.  I want to know what date you want to go to trial.

21   THE DEFENDANT:  Realistically, I would like to

22   make a statement before I go to trial, with all due respect.

23   First and foremost, I take exception to your ruling.

24   THE COURT:  You have a right to appeal from my

25   ruling.

PROCEEDING

1          THE DEFENDANT:  With all due respect, I have asked

2     my alleged legal advisor to help me obtain some discovery.  I

3     have yet to receive that.  I sent a copy also to the Court so

4     that the Court could be aware as to what I wish and what I

5     desire before I go to court -- I mean to trial, and to date,

6     I haven't gotten that.

7          I haven't seen an alleged video in which your

8     Honor, you stated to the district attorney that she was

9     supposed to give it to Mr. Weinstein within a week, and she

10    has yet --

11         THE COURT:  Did you receive the video?

12         MR. WEINSTEIN:  I don't know what video this is,

13    Judge.

14         THE COURT:  Let me see if I have any notes about

15    that.  I said ADA to turn over photos and video to defendant

16    in January.

17         MR. WEINSTEIN:  I have photos, Judge.

18         THE COURT:  You have the photos.  Is there any

19    video?

20         MS. FROMKIN:  There is no video, your Honor.  I

21    have a note from the assigned saying there is no video.

22         THE COURT:  There is no video.

23         THE DEFENDANT:  Okay fine.  With all due respect,

24    there is another issue that I would like to state.  With all

25    due respect, could somebody help me put on my glasses?  Could

PROCEEDING

1  I take these off so I can put on my glasses?

2  THE COURT:  Mr. Weinstein could you help

3  Mr. Crespo put on his glasses?

4  THE DEFENDANT:  Thank you.  I would like to read

5  something.  Is there any possibility that I can?

6  THE COURT:  Sit down.

7  THE DEFENDANT:  With all due respect there's a

8  presumption of regularity in essence that no official is

9  supposed to, acting under oath or under office, to submit

10  something contrary to their duty.

11  Realistically, you were informed in essence that

12  there was some blood on a crowbar.  Anyway based on the BOP,

13  or better said, the Bill of Particulars that were given by

14  the district attorney's office, it states that my blood was

15  never on any crowbar.

16  THE COURT:  Sir, you can -- you're going to have a

17  right to discuss all of this at the trial.  I've made a

18  decision on the motions.  The next item of business is the

19  trial.  I'm not going to rule on anything until there is a

20  trial.

21  THE DEFENDANT:  Your Honor, with all due

22  respect --

23  THE COURT:  With all due respect to you,

24  Mr. Crespo, I need to set a date for trial.

25  THE DEFENDANT:  All right.

PROCEEDING

1    THE COURT:  When will the People be ready?

2    MS. FROMKIN:  Any time, your Honor.

3    MR. WEINSTEIN:  Judge, I have to address the Court

4    about a couple of things.  It relates to his readiness for

5    trial, Judge.

6    Mr. Crespo asked me for minutes of certain

7    proceedings in this courtroom.  The Court signed the order, I

8    provided it.  Mr. Crespo asked me to have an investigator

9    appointed.  The Court signed an investigator order.

10   THE COURT:  Thank you.

11   MR. WEINSTEIN:  I've sent it out to the

12   investigator; however, Mr. Crespo asked the investigator to

13   come visit him in Riker's Island instead of write it up.

14   That hasn't been done.  It should be done within a week.

15   Mr. Crespo asked me today, he does want a DNA

16   expert appointed.  That I didn't know.  Now I know.  That

17   should impact the date.

18   THE DEFENDANT:  Excuse me, your Honor.  Can I

19   speak?

20   THE COURT:  Yes.  I need to first get a date from

21   you.  Do you mind letting me go through that?

22   THE DEFENDANT:  Let's make it a month and a half.

23   I have no problem with that.

24   THE COURT:  April 10th or April 17th?

25   THE DEFENDANT:  With all due respect, may I

PROCEEDING

1    continue?  May I elaborate?

2              THE COURT:  Briefly.  I'm not going to consider

3    any motions.  They need to be in writing.

4              THE DEFENDANT:  I will submit a motion.  I started

5    it, but unfortunately, I haven't been given a lot of time in

6    the law library.  I would ask if highly probable, if you

7    could realistically put in a notice so I could go to the law

8    library more frequently.  That's causing me extensive

9    problems, because I'm in a building where they have an

10   enormous amount of alarms, and realistically, I'm unable to

11   go to the law library in a manner which would be productive

12   for me to defend myself.

13             THE COURT:  I'll ask Mr. Weinstein to look into

14   that.

15             THE DEFENDANT:  If you could put it in an order.

16             MR. WEINSTEIN:  I'll call the captain to find out

17   what can be done, then I'll submit an order.

18             THE DEFENDANT:  With that in mind, I disagree at

19   the fact the district attorney, in essence, when I was

20   originally arraigned on this, you stipulated on your minutes

21   of December 6th, that you relied on what was told to you by

22   the district attorney that there was a crowbar, my blood was

23   on a crowbar.

24             Realistically, I believe that this might have

25   happened while they presented this alleged case to the grand

PROCEEDING

1    jury.  So therefore, their minds might have been infuriated

2    by this, or whatever, and caused to have a decision, which I

3    believe is counterproductive to me.

4              THE COURT:  You can appeal from any decision you

5    disagree with.  We're going to set a date now.  April 17th.

6    Hopefully, all your investigation will be concluded by that

7    date.

8              THE DEFENDANT:  But I disagree with you, your

9    Honor.  I think you should look into that.

10             THE COURT:  I appreciate your advice.

11             THE DEFENDANT:  Thank you, your Honor.  You have a

12   lovely day.

13                  *     *     *     *     *

14   Certified to be a true and accurate transcript.

15

16                        Ivelisse Rodriguez
                          Senior Court Reporter

17

18

19

20

21

22

23

24

25

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

CERTIFICATE OF DISPOSITION
NUMBER:  307937

THE PEOPLE OF THE STATE OF NEW  YORK
VS

CRESPO,HERMAN
Defendant

631 EAST 220 STREET D
Address

BRONX                    NY
City            State  Zip

Docket Number: 2011NY003442

10/06/1952
Date of Birth

3112210Y
NYSID Number

01/13/2011
Date of Arrest/Issue

Summons No:

140.35
Arraignment Charges

Case Disposition Information:

| Date | Court Action | Judge | Part |
|---|---|---|---|
| 11/08/2012 | DISMISSED - MOTION OF DA | BOYAR,D | A |

NO FEE CERTIFICATION

_ GOVERNMENT AGENCY        _ COUNSEL ASSIGNED
_ NO RECORD OF ATTORNEY READILY AVAILABLE. DEFENDANT STATES COUNSEL WAS ASSIGNED
   SOURCE _ ACCUSATORY INSTRUMENT _ DOCKET BOOK/CRIMS _ CRC3030[CRS963]

        I HEREBY CERTIFY THAT THIS IS A TRUE EXCERPT OF THE RECORD ON FILE IN
THIS COURT.

FANELLI,R
COURT OFFICIAL SIGNATURE AND SEAL

02/28/2013
DATE        FEE: NONE

(CAUTION: THIS DOCUMENT IS NOT OFFICIAL UNLESS EMBOSSED WITH THE COURT
          SEAL OVER THE SIGNATURE OF THE COURT OFFICIAL.)

SEALED

pursuant to the of the CPL