UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _9/19/18_

HERMAN CRESPO,

                    Plaintiff,

           -against-

DET. GERALDO RIVERA, Detective
      Investigating, Arresting Detective
      on Indictment 1562/11;
LAUREN PERRY, Trial A.D.A.;
BERNADETTE LUMAS
CODRINGTON; CHARLES WHITT;
DET. JAMES MCGUIRE; DET. JOSE
MORALES; CYRUS VANCE,

                  Defendants.

**ORDER**

16 Civ. 708 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Pro se Plaintiff Herman Crespo has sued the New York County District Attorney,

three Assistant District Attorneys ("ADAs"), and three New York City Police Department

("NYPD") detectives for alleged misconduct in connection with a burglary prosecution of

Plaintiff from August 2011 to January 2013. Plaintiff was acquitted at trial. Plaintiff claims that

Defendants knew that he was not guilty of the charged offense, and falsely claimed that there

was DNA and videotape evidence implicating him. Plaintiff also alleges that the District

Attorney did not properly train and supervise the Defendant ADAs.

        The Amended Complaint Plaintiff asserts claims under (1) Section 1983 for false

arrest, false imprisonment, malicious prosecution, denial of fair trial rights, cruel and unusual

punishment, abuse of process, and equal protection; and (2) state law for false arrest, false

imprisonment, malicious prosecution, abuse of process, equal protection under the New York

State Constitution, and defamation. The Amended Complaint includes a Monell claim against the District Attorney.

Defendants have moved to dismiss. For the reasons explained below, the Court concludes that (1) Plaintiff's claims against the ADAs are barred by the Eleventh Amendment and absolute immunity; (2) Plaintiff has not alleged a pattern or practice in connection with his Monell claim; (3) Plaintiff's claims against the detectives for false arrest and imprisonment are time-barred; (4) the malicious prosecution and denial of fair trial claims against Rivera fails, because his grand jury testimony may not be used against him; and (5) none of Plaintiff's remaining causes of action state a claim. Because all of Plaintiff's federal claims will be dismissed, this Court will not exercise supplemental jurisdiction over Plaintiff's state law claims.

## BACKGROUND[1]

## I.    FACTS

Pro se Plaintiff Herman Crespo resides in the Bronx. (Am. Cmplt. (Dkt. No. 45) at 2)[2]

Defendant Cyrus Vance, Jr. is the District Attorney for New York County. Defendants Bernadette Lumas Codrington and Lauren Perry are ADAs in Vance's office. (Id. at 2) The Amended Complaint also names a John Doe Defendant, who has been identified as Assistant District Attorney Charles Whitt. (Id. at 2; DA Br. (Dkt. No. 82) at 7, 9)

---

[1] Unless otherwise noted, the following facts are drawn from the Amended Complaint or exhibits attached thereto, and are presumed true for purposes of resolving Defendants' motion to dismiss. See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

[2] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Filing system.

2

Defendants Geraldo Rivera and Jose Morales are NYPD detectives. (Id. at 3, 4)
The Complaint also names Detective "James McGuire" as a defendant.[3] (Am. Cmplt. (Dkt. No. 45) at 1)

On August 15, 2011, Plaintiff was charged in an indictment with having committed burglary in the second degree. The burglary charge arises from an April 17, 2007 break-in at a 99 cent store located at 244 West 23rd Street in Manhattan. (Id. at 6-7; Pltf. Opp. (Dkt. No. 89) at 34; see March Decl., Ex. A (Indictment) (Dkt. No. 86-1) at 1))

The Amended Complaint alleges that Plaintiff was arrested on the burglary charge by Detectives Rivera, Morales, and McGuire on August 22, 2011 at about 6:00 p.m. (Id. at 4, 21; Pltf. Opp. (Dkt. No. 89) at 6) According to Plaintiff, the detectives knocked on his door without announcing that they were police officers. (Id. at 24) Plaintiff answered the door, and two of the detectives entered into his apartment. Detective Rivera asked Plaintiff whether he had a case pending in court. (Id. at 14) Plaintiff stated that he had a September 6, 2011 court date, and he showed Rivera a "court slip" reflecting that date. (Id. at 16, 37; Pltf. Opp. (Dkt. No. 89) at 6) Rivera falsely told Plaintiff that his court date had been moved up, and that the detectives were there to bring him to court. (Id. at 16; Pltf. Opp. (Dkt. No. 89) at 6) The detectives then brought Plaintiff to their unmarked car and drove him to the 10th Precinct. (Id. at 5, 16)

Plaintiff was questioned at the Tenth Precinct, and at about 10:00 p.m., he was brought to the Manhattan Detention Complex. (Am. Cmplt. (Dkt. No. 45) at 5; Pltf. Opp. (Dkt. No. 89) at 6) Plaintiff remained there until the next morning, when he was taken to court.

---

[3] Plaintiff may have intended to name Detective James McNair, whom the City has identified as having been involved in Plaintiff's arrest. (Jan. 18, 2017 City Ltr. (Dkt. No. 37) at 1-2)

3

Plaintiff was not arraigned that day, however, and was brought back to the Manhattan jail. (Id.) The next day, Plaintiff was arraigned and bail was set at $8,000. (Id. at 6, 9)

Because Plaintiff was not able to post bail, he remained in jail for the next seventeen and a half months. (Id. at 8) He proceeded to trial in January 2013, and on January 29, 2013, he was found not guilty. (Id. at 35)

Plaintiff claims that Defendants engaged in a variety of misconduct in connection with his case. For example, Plaintiff asserts that ADA Codrington and Detective Rivera falsely told the grand jury that Plaintiff had used a "bloody crowbar" to break into the 99 cent store. (Id. at 7; Pltf. Opp. (Dkt. No. 93) at 11 (stating that Rivera told the grand jury, "it was a bloody crowbar")) According to Plaintiff, ADA Codrington made these statements despite knowing that the DNA on the crowbar belonged to a female. (Pltf. Opp. (Dkt. No. 89) at 7) Plaintiff further alleges that Rivera knew that Plaintiff did not commit the burglary (Am. Cmplt. (Dkt. No. 45) at 28), and knew that there was no blood on the crowbar. (Pltf. Opp. (Dkt. No. 93) at 23) Plaintiff also claims that ADA Codrington falsely told the grand jury that she had DNA evidence demonstrating that Crespo had removed merchandise from the store. (Am. Cmplt. (Dkt. No. 45) at 7)

At Plaintiff's arraignment, ADA Whitt stated that the People had evidence of a bloody crowbar with Plaintiff's DNA on it. (Id. at 9) Plaintiff further claims that Whitt requested that a high bail be set, so that Plaintiff would remain in jail pending trial. (Id. at 10)

As to ADA Perry, Plaintiff claims that she falsely represented during court appearances that there was videotape of the burglary showing Plaintiff's face. Perry later retracted this claim, admitting that there was no such videotape. (Id. at 13) Plaintiff also asserts

4

that Perry knew that there was insufficient evidence to convict Plaintiff, that the alleged DNA was "taken unlawfully," and that the DNA had "never been tested for blood." (Id. at 11)

The Amended Complaint further alleges that a forensic report confirms that the crowbar had not been tested for blood. The forensic report and a laboratory report state that there is insufficient evidence to conclude whose DNA is on the crowbar. (Id. at 12, 44) Plaintiff further claims that there is no proof that a crowbar was used to commit the burglary, nor is there evidence placing Plaintiff in the area of the 99 cent store before, during, or after the burglary. (Id. at 12)

Interpreting the Amended Complaint liberally, it asserts (1) claims under Section 1983 for false arrest, false imprisonment, malicious prosecution, denial of fair trial rights, due process, equal protection, and cruel and unusual punishment; and (2) state law claims for false arrest, false imprisonment, malicious prosecution, abuse of process, equal protection, and defamation. The Amended Complaint also asserts a Monell claim against District Attorney Vance for failure to train and supervise the Defendant ADAs.

## II.    PROCEDURAL HISTORY

The Complaint was filed on January 28, 2016. (Dkt. No. 2) In letters dated December 8, 2016 and January 18, 2017, defense counsel identified John Doe Defendants referenced in the Complaint, including ADA Codrington, Detective James McNair, and Detective Morales, and provided addresses for service. (Dkt. Nos. 16, 37) The Amended Complaint was filed on March 10, 2017, and added as defendants ADA Codrington, "Arraignment A.D.A. John Doe," Detective James McGuire, and Detective Jose Morales. (Dkt. No. 45) Plaintiff did not name Detective James McNair as a defendant. Defendants later identified "Arraignment A.D.A. John Doe" as Charles Whitt. (See DA Br. (Dkt. No. 82) at 7; Notice of Appearance (Dkt. No. 47))

On June 2, 2017, this Court denied Defendants' motions to dismiss the Complaint as moot, dismissed claims against certain Defendants as frivolous, added Cyrus Vance, Jr. to the case as the proper party against whom the Monell claim could be brought, instructed the Clerk of Court to arrange for service of the Amended Complaint on certain Defendants, and stayed Plaintiff's time to respond to Defendants' motions to dismiss the Amended Complaint until service was complete. (Dkt. No. 66)

Defendants Codrington, Vance, Whitt, and Morales were served in June and July 2017. (Dkt. Nos. 67, 71, 72, 77) Service was not effected on Defendant James McGuire, because there was "[n]o one with that name at [the service] location." (Dkt. No. 76)

Defendants moved to dismiss the Amended Complaint on February 8 and 16, 2018 (Dkt. Nos. 81, 84); Plaintiff filed oppositions on March 9 and April 6, 2018 (Dkt. Nos. 89 & 93); and Defendants filed replies on April 6 and 9, 2018. (Dkt. Nos. 94, 96) Plaintiff filed a supplementary letter on May 1, 2018. (Dkt. No. 98)

## DISCUSSION

## I.   MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

6

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

A "pro se complaint . . . [is] interpret[ed] . . . to raise the 'strongest [claims] that [it] suggest[s].'" Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)); see Weixel v. Bd. of Educ., 287 F.3d 138, 145-46 (2d Cir. 2002) ("When considering motions to dismiss a pro se complaint such as this, 'courts must construe [the complaint] broadly . . . .'" (quoting Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000))). "However, although pro se filings are read liberally and must be interpreted 'to raise the strongest arguments that they suggest,' a pro se complaint must still 'plead sufficient facts to state a claim to relief that is plausible on its face.'" Wilder v. United States Dep't of Veterans Affairs, 175 F. Supp. 3d 82, 87 (S.D.N.Y. 2016) (internal citations omitted). Moreover, "the court need not accept as true 'conclusions of law or unwarranted deductions of fact.'" Whitfield v. O'Connell, 9 Civ. 1925 (WHP), 2010 WL 1010060, at *4 (S.D.N.Y. Mar. 18, 2010) (quoting First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994)); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) ("'[T]hreadbare recitals of the elements a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief].'" (quoting Iqbal, 556 U.S. at 662)).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco

7

v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. Cty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)). Moreover, where "allegations made in a pro se plaintiff's memorandum of law . . . are consistent with those in the complaint, [they] may also be considered on a motion to dismiss." Braxton v. Nichols, 8 Civ. 8568 (PGG), 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010) (citations omitted); see also Burgess v. Goord, 98 Civ. 2077 (SAS), 1999 WL 33458, at *1 n.1 (Jan. 26, 1999) (same).

## II. VANCE, CODRINGTON, PERRY, AND WHITT'S MOTION TO DISMISS

### A. Plaintiff's Section 1983 Claims Against Codrington, Perry, and Whitt in Their Official Capacities

"'[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity.'" Gorton v. Gettel, 554 F.3d 60, 62 (2d Cir. 2009) (quoting Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006)). This immunity extends to "'state agents and state instrumentalities that are, effectively, arms of a state.'" Id. (quoting Woods, 466 F.3d at 236). New York State has not consented to being sued in federal court under Section 1983, and Congress has not abrogated state immunity for Section 1983 claims seeking damages. See Davis v. New York, 316 F.3d 93, 101 (2d Cir. 2002) (affirming dismissal of Section 1983 claims against individual defendants in their official capacities). Accordingly, the Eleventh Amendment bars Plaintiff's claims against Codrington, Perry, and Whitt in their official capacities, because they represent the state in their role as criminal prosecutors. Zanfardino v. City of New York, 15 Civ. 8829 (GHW), 2018 WL

8

1281835, at *2 (S.D.N.Y. Mar. 9, 2018) ("Plaintiff claims that former Bronx County ADA Meierhans violated his constitutional rights by withholding exculpatory evidence and proceeding with the prosecution despite such exculpatory evidence. To the extent Plaintiff seeks damages from ADA Meierhans in her official capacity, the Eleventh Amendment bars the claims."); Morales v. City of New York, 59 F. Supp. 3d 573, 578 (S.D.N.Y. 2014) ("To the extent that [plaintiff] is suing [Bronx County assistant district attorneys] for damages in their official capacities, her suit is plainly barred by the Eleventh Amendment."); Wiltshire v. Williams, 10 Civ. 6947, 2012 WL 899383, at *4 (S.D.N.Y. Mar. 16, 2012) ("The Eleventh Amendment thus precludes any claim for monetary damages against [the District Attorney for New York County and three Assistant District Attorneys] in their official capacities."); see also Rodriguez v. Weprin, 116 F.3d 62, 66 (2d Cir. 1997) ("Rodriguez claims present and former Kings County District Attorneys Charles Hynes and Elizabeth Holtzman and Assistant District Attorneys Jane Sutley and Peter Weinstein are responsible for the delay in his appeal. To the extent Rodriguez seeks damages from these appellees in their official capacities, the Eleventh Amendment bars his claims."). Accordingly, Plaintiff's Section 1983 claims against Codrington, Perry, and Whitt in their official capacities will be dismissed.

## B. Plaintiff's Section 1983 Claims Against Codrington, Perry, and Whitt in Their Personal Capacities

### 1. Legal Standard

"Although section 1983 imposes liability upon 'every person' who deprives another of a constitutional right under color of state law, the doctrines of absolute and qualified immunity shield prosecutors and law enforcement officers from liability related to their official acts." Day v. Morgenthau, 909 F.2d 75, 77 (2d Cir. 1990). While Section 1983 does not explicitly provide for such immunity, the Supreme Court and Second Circuit have ruled that

9

"'Congress did not intend § 1983 to abrogate immunities "well grounded in history and

reason."'" Pinaud v. Cty. of Suffolk, 52 F.3d 1139, 1147 (2d Cir. 1995) (quoting Buckley v.

Fitzsimmons, 509 U.S. 259, 268 (1993)).

>   The Second Circuit has described absolute and qualified immunity as follows:

> Such immunities are of two types: absolute and qualified. Buckley v. Fitzsimmons, [509
> U.S. 259, 268 (1993)]. Absolute immunity is reserved for officials who perform "special
> functions" and deserve absolute protection from damages liability. Among these are
> prosecutors, and persons working under their direction, when they function as advocates
> for the state in circumstances "intimately associated with the judicial phase of the
> criminal process." Imbler v. Pachtman, [424 U.S. 409, 430-31 (1976);] see also Hill v.
> City of New York, [45 F.3d 653, 660 (2d Cir. 1995)] (extending absolute prosecutorial
> immunity to persons acting under the direction of prosecutors in performing functions
> closely tied to the judicial process).

Bernard v. Cty. of Suffolk, 356 F.3d 495, 502 (2d Cir. 2004).

>   The Second Circuit has noted that

> [t]he doctrine of absolute prosecutorial immunity creates a formidable obstacle for a
> plaintiff seeking to maintain a civil rights action against a district attorney, as it provides
> that "prosecutors are absolutely immune from liability under § 1983 for their conduct in
> 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is
> 'intimately associated with the judicial phase of the criminal process.'" Burns v. Reed,
> [500 U.S. 478, 486 (1991)] (quoting Imbler, [424 U.S. at 430-31]).

Pinaud, 52 F.3d at 1147.

>   A prosecutor who is sued in his or her individual capacity may assert absolute

immunity as a defense, and courts grant Rule 12(b)(6) motions to dismiss on grounds of absolute

immunity where the facts establishing the defense appear on the face of the complaint.

Deronette v. City of New York, 5 Civ. 5275 (SJ), 2007 WL 951925, at *4 (E.D.N.Y. Mar. 27,

2007) (citing Hill, 45 F.3d at 663 (absolute immunity may be decided on a Rule 12(b)(6) motion

where facts establishing the defense may be "gleaned from the complaint")). Indeed, district

courts are encouraged to determine the applicability of an absolute immunity defense at an early

stage of a litigation, and preferably before discovery.[4] Id. (citing Mitchell v. Forsyth, 472 U.S.

511, 526 (1985); United States v. Colbert, 87 Civ. 4789, 1991 WL 183376 at *4 (S.D.N.Y. Sept.

11, 1991)). This approach is appropriate given that "absolute immunity defeats a suit at the

outset, so long as the official's actions were within the scope of the immunity." Imbler, 424 U.S.

at 419 n. 13. "'[T]he official seeking absolute immunity bears the burden of showing that such

immunity is justified for the function in question.'" Buckley, 509 U.S. at 270 (1993) (quoting

Burns, 500 U.S. at 486).

      In Imbler, the Supreme Court held that prosecutors are entitled to absolute

immunity for damage suits under Section 1983 for all acts "intimately associated with the

judicial phase of the criminal process," including "initiating a prosecution and . . . presenting the

State's case [at trial]." Imbler, 424 U.S. at 430. And in Buckley, the Supreme Court considered

whether prosecutors are entitled to absolute immunity for "investigative" work performed well

before an indictment is sought. 509 U.S. at 273. Although the Court rejected the prosecutors'

claim for absolute immunity in such circumstances, the Court noted that it had

> not retreated . . . from the principle that acts undertaken by a prosecutor
> preparing for the initiation of judicial proceedings or for trial, and which occur
> in the course of his role as an advocate for the State, are entitled to the
> protections of absolute immunity. Those acts must include the professional
> evaluation of the evidence assembled by the police and appropriate preparation
> for its presentation at trial or before a grand jury after a decision to seek an
> indictment has been made.

Id.

      Accordingly, whether a prosecutor has absolute immunity for a particular act

"depends principally on the nature of the function performed, not on the office itself." Ying Jing

---

[4] The applicability of absolute immunity is generally determined before assessing whether a
plaintiff has sufficiently alleged a constitutional violation. Pinaud, 52 F.3d at 1148 n. 4 (citing
Buckley, 509 U.S. at 261).

Gan v. City of New York, 996 F.2d 522, 530 (2d Cir. 1993). "Such functions include the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial." Johnson v. City of New York, 00 Civ. 3626 (SHS), 2000 WL 1335865, at *2 (S.D.N.Y. Sept. 15, 2000) (internal citations omitted). Moreover, "application of immunity is not limited to the duties a prosecutor performs in the courtroom." Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994) (citing Buckley, 509 U.S. at 271-72).

"[A] district attorney is [not only] absolutely immune from civil liability for initiating a prosecution and presenting the case at trial," but also "immune for conduct in preparing for those functions; for example, evaluating and organizing evidence for presentation at trial or to a grand jury, or determining which offenses are to be charged." Hill, 45 F.3d at 661 (citations omitted). Prosecutorial immunity from Section 1983 damages liability thus covers "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Dory, 25 F.3d at 83. The Second Circuit has been "mindful of the Supreme Court's admonition that 'the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom. . . . Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence.'" Barbera v. Smith, 836 F.2d 96, 100 (2d Cir. 1987) (quoting Imbler, 424 U.S. at 431 n. 33); see also Barrett v. United States, 798 F.2d 565, 571 (2d Cir. 1986) ("The absolute immunity accorded to government prosecutors encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation . . . .").

Absolute immunity likewise protects prosecutors against claims that they conspired to, or actually presented, fabricated evidence at trial:

12

[A]bsolute immunity protects a prosecutor from §1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate. This would even include . . . allegedly conspiring to present false evidence at a criminal trial. The fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial, because "[t]he immunity attaches to his function, not to the manner in which he performed it." Barrett v. United States, 798 F.2d 565, 573 (2d Cir. 1986); see also Daloia v. Rose, 849 F.2d 74, 75 (2d Cir. 1988) (per curiam) (holding . . . that prosecutor was immune from §1983 liability for knowingly presenting false testimony). As much as the idea of a prosecutor conspiring to falsify evidence [is disturbing,] . . . there is a greater societal goal in protecting the judicial process by preventing perpetual suits against prosecutors for the performance of their duties. See Imbler, [424 U.S. at 426-28.]

Dory, 25 F.3d at 83.

## 2. **Analysis**

Perry, Codrington, and Whitt argue that they are entitled to absolute immunity, because the Amended Complaint's allegations against them – including that they made misrepresentations to the grand jury and the court about evidence, obtained an indictment on less than probable cause, and went to trial knowing that they lacked sufficient evidence to convict Plaintiff – "fall squarely within the realm of absolute immunity." (DA Br. (Dkt. No. 82) at 14-15 (citing Am. Cmplt. (Dkt. No. 45) at 7, 10, 13))

The Court agrees. The Amended Complaint's allegations against these Defendants address their decisions to charge and try Plaintiff, and their conduct before the grand jury and in the courtroom. Prosecutors' conduct in these areas is protected by absolute immunity, whether it involves "determining which offenses are to be charged," Hill, 45 F.3d at 661, "'obtaining, reviewing, and evaluating [] evidence,'" Barbera, 836 F.2d at 100 (quoting Imbler, 424 U.S. at 431 n. 33), or presenting allegedly fabricated evidence to the grand jury, a trial jury, or the court. Dory, 25 F.3d at 83.

As discussed above, the Amended Complaint alleges that Codrington, Whitt, and Perry lied to the grand jury or to the court about (1) whether Plaintiff used a "bloody crowbar" in

13

committing the alleged burglary; (2) whether there was DNA evidence linking Plaintiff to the crime; and (3) whether there was videotape evidence implicating Plaintiff in the burglary. (Am. Cmplt. (Dkt. No. 45) at 7, 9-10, 13) In addition, Whitt is criticized for seeking a high bail, and Perry is alleged to have pursued the prosecution despite knowing that there was insufficient evidence to convict Plaintiff. (Id. at 10-11)

Codrington, Whitt, and Perry are entitled to absolute immunity for all of these alleged acts, none of which involve "investigative" work performed before seeking an indictment. To the contrary, all of this alleged conduct is "intimately associated with the judicial phase of the criminal process," including "initiating a prosecution and . . . presenting the State's case [at trial]," Imbler, 424 U.S. at 430, as well as "the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial." Johnson v. City of New York, 00 Civ. 3626 (SHS), 2000 WL 1335865, at *2 (S.D.N.Y. Sept. 15, 2000) (internal citations omitted). As discussed above, "a district attorney is [not only] absolutely immune from civil liability for initiating a prosecution and presenting the case at trial," but also "immune for conduct in preparing for those functions; for example, evaluating and organizing evidence for presentation at trial or to a grand jury, or determining which offenses are to be charged." Hill, 45 F.3d at 661 (citations omitted). Because all of the allegations Plaintiff raises against Codrington, Whitt, and Perry involve their "'role as advocate[s] for the State,'" Barbera, 836 F.2d at 100 (quoting Imbler, 424 U.S. at 431 n.33), these Defendants are entitled to absolute immunity, and Plaintiffs' claims against them will be dismissed.

14

## C. Plaintiff's Section 1983 Claim Against Vance in His Official Capacity

### 1. Vance as an Agent of the City of New York

Plaintiff brings a Section 1983 claim against District Attorney Vance in his official capacity, based on his alleged failure to train and failure to supervise the Defendant ADAs. (Am. Cmplt. (Dkt. No. 45) at 8) Such claims are "another way of pleading an action against an entity of which an officer is an agent." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 n.55 (1978).

As an initial matter, for purposes of Plaintiff's Section 1983 claims, Vance is acting as an agent of the City. "When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." Baez v. Hennessy, 853 F.2d 73, 77 (2d Cir. 1988). "With respect, however, to claims centering not on decisions whether or not, and on what charges, to prosecute but rather on the administration of the district attorney's office, the district attorney has been treated not as a state official but rather as an official of the municipality to which he is assigned." Ying Jing Gan v. City of New York, 996 F.2d 522, 536 (2d Cir. 1993). For example, in Walker v. City of New York, 974 F.2d 293 (2d Cir. 1992), plaintiff "asserted that the City should have trained police officers and ADAs not to commit or suborn perjury and not to suppress exculpatory evidence. Walker asserted that the City's failure to train constituted deliberate indifference to his constitutional rights and proximately caused his wrongful imprisonment." Id. at 295. The Second Circuit concluded that the district attorney was acting as an agent of the City for purposes of Walker's claim, because "Walker is challenging the district attorney's management of the office – in particular the decision not to supervise or train ADAs on Brady and perjury issues." Id. at 301. Similarly here, Plaintiff is challenging Vance's alleged decision not to train or supervise ADAs with respect to (1) presenting false evidence to the grand jury, trial jury, or the court; and (2) their Rosario and

Brady obligations. (See Am. Cmplt. (Dkt. No. 45) at 7-8; Pltf. Opp. (Dkt. No. 93) at 13) As such, Plaintiff's Section 1983 claim against Vance in his official capacity as a municipal officer is "treated as an action against the municipality itself." Coon v. Town of Springfield, 404 F.3d 683, 687 (2d Cir. 2005).

## 2.     Standard for Municipal Liability

"[A] municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell, 436 U.S. at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694. Accordingly, "'[t]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007) (quoting Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983)).

A plaintiff can satisfy the "policy or custom" requirement by showing, inter alia, that a "failure to train or supervise city employees . . . amounts to 'deliberate indifference' to the rights of those with whom the city employees interact." Id. (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). "To establish 'deliberate indifference,' a plaintiff must show that [i] a policymaker knows 'to a moral certainty' that city employees will confront a particular situation; [ii] the situation either presents the employee with 'a difficult choice of the sort that training or supervision will make less difficult' or 'there is a history of employees mishandling the situation'; and [iii] 'the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.'" Id. at 195-96 (quoting Walker, 974 F.2d at 297-

16

98); see also Reynolds v. Giuliani, 506 F.3d 183, 192-93 (2d Cir. 2007) (indicating that Walker provides the analytical framework for both failure to train and failure to supervise claims).

"Courts have been skeptical of municipal liability claims predicated on an alleged failure to train, with the Supreme Court admonishing lower courts that '[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.'" Rodriguez v. City of New York, 291 F. Supp. 3d 396, 419 (S.D.N.Y. 2018) (quoting Connick v. Thompson, 563 U.S. 51, 61 (2011)). "A municipality may nonetheless be deliberately indifferent, and thus liable, where 'city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights.'" Id. (quoting Connick, 563 U.S. at 61).

Moreover, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick, 563 U.S. at 62 (quoting Board. of Cty. Comm'rs v. Brown, 520 U.S. 397, 409 (1997)).[5] Plaintiff must also "establish not only that the officials' purported failure to train occurred under circumstances that could constitute deliberate indifference, but also that plaintiffs identify a

---

[5] Proof of such a pattern is not necessary where "the unconstitutional consequences of failing to train [are] so patently obvious that a city should be liable under § 1983 without proof of a pre-existing pattern of violations." Connick, 563 U.S. at 64; see City of Canton v. Harris, 489 U.S. 378, 390 n.10 (1989) (evidence of a pattern not necessary where, "[f]or example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, see Tennessee v. Garner, [471 U.S. 1] (1985), can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights."); Chamberlain v. City of White Plains, 986 F. Supp. 2d 363, 391-92 (S.D.N.Y. 2013) (collecting cases where single-incident theory was sustained, including where police officers were given no training as to handling exculpatory evidence; jail personnel were given no training on providing proper medical care to inmates; and jail employees were given no training as to inmates who needed immediate medical attention). The Amended Complaint does not plead facts suggesting that a single-incident theory could be sustained here.

17

specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 129 (2d Cir. 2004) (quoting City of Canton v. Harris, 489 U.S. 378, 391 (1989)).

As to failure to supervise, "[a] municipality may be found to have a custom that causes a constitutional violation" if the city has [1] been "'faced with a pattern of misconduct,'" but [2] "'does nothing, compelling the conclusion that [it] has acquiesced in or tacitly authorized its subordinates' unlawful actions.'" Okin v. Vill. of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 439 (2d Cir. 2009) (quoting Reynolds, 506 F.3d at 192). A plaintiff may demonstrate acquiescence or tacit authorization through "repeated[] fail[ures] to make any meaningful investigation into" repeated complaints of civil rights violations, Outlaw v. City of Hartford, 884 F.3d 351, 380 (2d Cir. 2018), or "a persistent failure to discipline subordinates who violate civil rights." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983).

### 3. Analysis

Defendants argue that Plaintiff has not pled facts making out a Monell claim, because he has shown the necessary pattern of "deliberate indifference." (DA Br. (Dkt. No. 82) at 19-22) The Court agrees that Plaintiff has not pled facts showing a pattern of misconduct. Instead, the Amended Complaint cites only alleged instances of ADA misconduct that took place in Plaintiff's case. Because Plaintiff has not pled facts demonstrating that there has been a pattern of similar constitutional violations, the failure to train and failure to supervise claims against District Attorney Vance will be dismissed. See Boddie v. City of New York, 15 Civ. 4275 (GHW), 2016 WL 1466555, at *3 (S.D.N.Y. Apr. 13, 2016) (plaintiff bringing excessive force claim also brought Monell claim against City based on alleged failure to train and failure to discipline police officers; court concluded that "[plaintiff's] conclusory statement that the March

18

25, 2015 incident was 'not an isolated incident,' without alleging other similar occasions, fails as a matter of law"); Delorbe-Bell v. City of New York, 15 Civ. 2344 (LGS), 2016 WL 1451581, at *3 (S.D.N.Y. Apr. 12, 2016) (plaintiff allegedly assaulted during arrest brought Monell claim based on City's alleged failure to train and discipline its officers on excessive force; court rejected argument that Office of Inspector General report showing 207 substantiated allegations of excessive force between 2010 and 2014 was sufficient to create a plausible inference of City's deliberate indifference "given the size of [the] NYPD").

## III.  RIVERA AND MORALES' MOTION TO DISMISS

### A.  False Arrest and False Imprisonment

Defendants Rivera and Morales argue that Plaintiff's Section 1983 claims for false arrest and false imprisonment are time-barred. (Detective Br. (Dkt. No. 85) at 7-8)

"Because there is no federal statute of limitations for claims brought pursuant to 42 U.S.C. §§ 1983 and 1985, courts apply the relevant state statute." Davis v. Travis, 7 Civ. 3047 (WHP), 2008 WL 5191074, at *3 (S.D.N.Y. Dec. 3, 2008) (citing Singleton v. New York, 632 F.2d 185, 189 (2d Cir. 1980)); see Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002) (for Section 1983 actions, "the applicable limitations period is found in the 'general or residual [state] statute [of limitations] for personal injury actions'" (alterations in Pearl) (quoting Owens v. Okure, 488 U.S. 235, 249-50 (1989))). "In New York, the statute of limitations for §§ 1983 and 1985 actions is three years." Davis, 2008 WL 5191074, at *3 (citing Singleton, 632 F.2d at 189).

"While state law supplies the statute of limitations . . . , federal law determines when a federal claim accrues." Quiles v. City of New York, 1 Civ. 10934 (LTS), 2003 WL 21961008, at *5 (S.D.N.Y. Aug. 13, 2003) (citing Connolly v. McCall, 254 F.3d 36, 41 (2d Cir. 2001)). In general, "accrual occurs 'when the plaintiff knows or has reason to know of the injury

19

which is the basis of his action.'" Pearl, 296 F.3d at 80 (quoting Singleton, 632 F.2d at 191) (internal quotation marks and citations omitted). The "'discovery of the injury, [and] not discovery of the other elements of the claim, . . . starts the clock.'" Whitfield, 2010 WL 1010060, at *5 (quoting Gonzalez v. Wright, 665 F. Supp. 2d 334, 349 (S.D.N.Y. 2009)), aff'd, 402 F. App'x 563 (2d Cir. 2010).

A false arrest or false imprisonment claim accrues at arraignment. See Wallace v. Kato, 549 U.S. 384, 397 (2007) ("[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."); Swinton v. City of New York, 785 F. Supp. 2d 3, 12 (E.D.N.Y. 2011) ("[T]he limitations period for a false arrest claim begins 'when the alleged false imprisonment ends,' namely 'once the victim becomes held pursuant to [legal] process – when, for example, he is bound over by a magistrate or arraigned on charges.'" (second alteration in Swinton) (quoting Kato, 549 U.S. at 389)); Rosato v. New York Cty. Dist. Attorney's Office, 9 Civ. 3742 (DLC), 2009 WL 4790849, at *3 n.4 (S.D.N.Y. Dec. 14, 2009) (a "claim based on false imprisonment accrues once a detainee is held pursuant to legal process, for example when he is bound over by a magistrate or arraigned on charges" (citing Kato, 549 U.S. at 389-90)).

Here, the Amended Complaint states that Plaintiff was arrested on August 22, 2011, and was arraigned on August 24, 2011. (Am. Cmplt. (Dkt. No. 45) at 9) Accordingly, Plaintiff's false arrest and false imprisonment claims accrued on August 24, 2011, and expired on August 24, 2014. Because the Complaint was filed on January 28, 2016 (Cmplt. (Dkt. No. 2))

20

– nearly a year and a half after the statute of limitations expired – Plaintiff's false arrest and false imprisonment claims are time-barred.[6]

## B. Malicious Prosecution and Denial of Fair Trial

### 1. Legal Standards

To state a claim for malicious prosecution under Section 1983, "a plaintiff must show a violation of his rights under the Fourth Amendment[] . . . and must establish the elements of a malicious prosecution claim under state law." Manganiello v. City of New York, 612 F.3d 149, 160-61 (2d Cir. 2010) (internal citations omitted). "To establish a malicious prosecution claim under New York law, a plaintiff must prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for

---

[6] Plaintiff argues that he was required to "wait until the proceedings of the case [against him had] been finalized in his favor"; that he filed a notice of claim with the City; and that "he sent a copy of the complaint to the Attorney General to inform [him] that he was intending on suing the city and state of New York in their respective official and unofficial manner." (Pltf. Opp. (Dkt. No. 93) at 9) These arguments are not persuasive because – as discussed above – Plaintiff's false arrest and false imprisonment claims accrued when he was arraigned. See Nunez v. Mitchell, 17 Civ. 9734 (AJN), 2018 WL 4301370, at *3 (S.D.N.Y. Sept. 10, 2018) ("Plaintiff argues that his false arrest claim is not time barred because fewer than three years have lapsed between the filing of Plaintiff's complaint and the date of dismissal of the state criminal proceeding against him. . . . Citing Covington v. City of New York, 171 F.3d 117 (2d Cir. 1999), he contends that his Section 1983 claim should not accrue until the dismissal of the state criminal proceedings. This is incorrect. As the Supreme Court stated in . . . Kato, 549 U.S. at 397, time on a false arrest claim begins to accrue when the arrest occurs. Accordingly, his false arrest claim is time barred." (internal citation omitted)); see also Kato, 549 U.S. at 397 ("the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."); Randolph v. Metro. Transportation Auth., 17 Civ. 1433 (DLC), 2018 WL 2943744, at *4 (S.D.N.Y. June 12, 2018) ("'[W]hile the favorable termination of judicial proceedings is an element of a claim for malicious prosecution [it is] not an element of a claim for false arrest.'" (quoting Weyant v. Okst, 101 F.3d 845, 853 (2d Cir. 1996))).

defendant's actions.'" Id. at 161 (quoting Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997) (internal quotation marks and citation omitted)).

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution," whether brought under Section 1983 or New York law. Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003). Moreover – in the context of a malicious prosecution claim – "indictment by a grand jury creates a presumption of probable cause." Id. This presumption "may only be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" Id. (quoting Colon v. City of New York, 60 N.Y.2d 78, 83 (1983)) (emphasis in Savino); Bernard v. United States, 25 F.3d 98, 104 (2d Cir. 1994) (same); Broughton v. State, 37 N.Y.2d 451, 456 (1975) (same).

In Rehberg v. Paulk, 566 U.S. 356 (2012), the Supreme Court held that grand jury witnesses, like trial witnesses, are entitled to absolute immunity "from any § 1983 claim based on the witness' testimony." Id. at 369. The Court further held that "this rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution." Id.; see also Coggins v. Buonora, 776 F.3d 108, 112-13 (2d Cir. 2015) (holding that under Rehburg law enforcement witnesses have absolute immunity for grand jury testimony).

"Following Rehberg, a plaintiff may not be able to rebut the presumption of probable cause by relying on a police officer's perjurious testimony before the grand jury." Adamou v. Doyle, 12 Civ. 7789 (ALC), 2017 WL 1230541, at *3 (S.D.N.Y. Jan. 12, 2017) (citing Nickey v. City of New York, 11 Civ. 3207 (RRM), 2013 WL 5447510, at *7 (E.D.N.Y.

Sept. 27, 2013) (holding that after Rehberg, "plaintiffs can no longer base malicious prosecution claims solely on the theory that an officer lied to the grand jury or use an officer's grand jury testimony to rebut the probable cause presumption"), on reconsideration in part sub nom. Nickey v. Coward, 2016 WL 324959 (E.D.N.Y. Jan. 26, 2016), aff'd sub nom. Nickey v. Carboine, 682 F. App'x 78 (2d Cir. 2017)); Carr v. City of New York, 11 Civ. 6982 (SAS), 2013 WL 1732343, at *4 (S.D.N.Y. Apr. 19, 2013) ("[A] plaintiff can no longer overcome this presumption by alleging that a police officer committed perjury before the grand jury[,] as officers are entitled to absolute immunity for their testimony in that forum.").

Immunity for testimony before the grand jury does not extend to matters external to the grand jury. As the Rehburg court stated, "we do not suggest that absolute immunity extends to all activity that a witness conducts outside of the grand jury room. For example, we have accorded only qualified immunity to law enforcement officials who falsify affidavits." Rehburg, 556 U.S. at 370 n.1 (emphasis in original). And as the Second Circuit stated in Coggins v. Buonora, 776 F.3d 108 (2d Cir. 2015),

> [w]hen a police officer claims absolute immunity for his grand jury testimony under Rehberg, the court should determine whether the plaintiff can make out the elements of his § 1983 claim without resorting to the grand jury testimony. If the claim exists independently of the grand jury testimony, it is not "based on" that testimony, as that term is used in Rehberg. [566 U.S. at 369]. Conversely, if the claim requires the grand jury testimony, the defendant enjoys absolute immunity under Rehberg.

Id. at 113.

As for Plaintiff's denial of fair trial claim, "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." Jocks v.

23

Tavernier, 316 F.3d 128, 138 (2d Cir. 2003) (quoting Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997)). "To prevail on a denial of fair trial claim, a plaintiff must show that 'an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result.'" Soomro v. City of New York, 174 F. Supp. 3d 806, 815 (S.D.N.Y. 2016) (quoting Jovanovic v. City of New York, 486 F. App'x 149, 152 (2d Cir. 2012)).

Like other Section 1983 claims, denial of fair trial claims cannot be based on a police officer's allegedly perjured grand jury testimony, because a police officer is "absolutely immune from section 1983 liability arising from false or perjured grand jury testimony." Carr v. City of New York, 11 Civ. 6982 (SAS), 2013 WL 1732343, at *7 (S.D.N.Y. Apr. 19, 2013) (citing Rehberg, 556 U.S. at 369 ("[W]e conclude that grand jury witnesses should enjoy the same immunity as witnesses at trial. This means that a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony.")) (dismissing denial of fair trial claim).

## 2. Analysis

Here, Rivera and Morales argue that Plaintiff's allegations are not sufficient to overcome the presumption of probable cause. (Detective Br. (Dkt. No. 85) at 8-10) Defendants contend that while the Amended Complaint alleges – in a conclusory fashion – that Rivera knew that Plaintiff had not committed the burglary, there are no facts pled in the Amended Complaint demonstrating that either detective lied to secure an indictment, or that the indictment was secured through bad faith or perjury. (Id. at 9-10) Defendants also contend that Rehberg bars Plaintiff from relying on Rivera's testimony before the grand jury. (Detective Reply (Dkt. No. 96) at 4-5)

The Court concludes that the Amended Complaint does not plead sufficient facts to support a malicious prosecution or a denial of fair trial claim. First, the Amended Complaint's

24

allegations concerning Plaintiff's arrest – including that the detectives (1) did not show him a warrant (Am. Cmplt. (Dkt. No. 45) at 3); (2) lied in stating that he was being arrested on an earlier case (id. at 3, 16); (3) acted improperly in arresting him before his neighbors and friends (id. at 4, 16-17); and (4) scared him "half out of his mind" (id. at 15) – are not relevant to his malicious prosecution and fair trial claims.

Plaintiff contends, however, that Rivera lied to the grand jury in stating that "it was a bloody crowbar." (Pltf. Opp. (Dkt. No. 93) at 11)[7] Rehberg bars Plaintiff from rebutting the presumption of probable cause or supporting his denial of fair trial claim based on Rivera's testimony, however, as Rivera is entitled to absolute immunity for his testimony before the grand jury.[8]

Although Plaintiff can rebut the presumption based on conduct that took place outside the grand jury, the Amended Complaint's conclusory allegations are not sufficient to do so. For example, Plaintiff asserts that (1) the detectives knew that Plaintiff was not observed at

---

[7] The grand jury transcript submitted by Plaintiff does not demonstrate that Rivera ever told the grand jury that he recovered a "bloody crowbar," or that Plaintiff had used a "bloody crowbar" to commit the burglary. (Pltf. Opp. (Rivera Grand Jury Testimony) (Dkt. 93-2) at 87 (testifying that "[b]lood DNA recovered from the scene, a crowbar" were vouchered); id. 89 (testifying that the "blood DNA" was vouchered under [N] 656005, and the crowbar was vouchered under [N] 656006))

[8] This same principle bars Plaintiff from relying on ADA Perry's alleged false statements before the grand jury that Plaintiff used a "bloody crowbar" in committing the burglary, and that there was DNA evidence demonstrating that Plaintiff had stolen merchandise from the 99 cent store. (Am. Cmplt. (Dkt. No. 45) at 7) As discussed earlier, Perry is entitled to absolute immunity for her statements before the grand jury. See Hadid v. City of New York, 15 Civ. 19 (WFK), 2015 WL 7734098, at *8 (E.D.N.Y. Nov. 30, 2015) ("Plaintiff claims he has overcome the presumption of probable cause because the Complaint alleges Defendants made false claims, failed to disclose exculpatory evidence, and prosecuted Plaintiff in bad faith. However, . . . the Complaint only alleges such facts with respect to Defendants Moehle and Carvajal [– two Kings County Assistant District Attorneys –] both of whom are entitled to absolute immunity."), aff'd, 730 F. App'x 68 (2d Cir. 2018).

the scene of the burglary; (2) the detectives knew that he was not carrying a bloody crowbar; (3) Rivera knew that there was no blood on the crowbar; and (4) inconsistently, that Rivera knew that it would be impossible to determine whose blood was on the crowbar. (Am. Cmplt (Dkt. No. 45) at 19; Pltf. Opp. (Dkt. No. 93) at 23) The Amended Complaint does not plead facts supporting these conclusory allegations, however, nor has Plaintiff demonstrated that the indictment was procured by fraud, perjury, the suppression of evidence, or other police misconduct. See Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003) ("[U]nder New York law, indictment by a grand jury creates a presumption of probable cause that may only be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" (emphasis in original) (quoting Colon v. City of New York, 60 N.Y.2d 78, 83 (1983))); Sullivan v. City of New York, 10 Civ. 38 (NRB), 2011 WL 3806006, at *1, 5 (S.D.N.Y. Aug. 29, 2011) (plaintiff alleged that "defendants were provided with exculpatory evidence and knew or should have known that plaintiff was not guilty of the charges against him"; malicious prosecution claim dismissed because plaintiff had not pled "sufficient facts to suggest that defendants deliberately falsified their statements in support of a grand jury indictment, had a collateral motive in pursuing plaintiff's prosecution, or otherwise acted in contravention of their duties").

Similarly as to the denial of fair trial claim, Plaintiff has not pled non-conclusory factual allegations demonstrating that that the detectives fabricated evidence that was forwarded to prosecutors. Accordingly, the denial of fair trial claim will be dismissed.

## C.   **Eighth Amendment Claim**

Although Plaintiff brings a claim under the Eighth Amendment (Am. Cmplt. (Dkt. No. 45) at 19), "[a] pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and

Unusual Punishments Clause of the Eight Amendment." Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017). This is because – in contrast to a convicted inmate – "'[p]retrial detainees have not been convicted of a crime and thus "may not be punished in any manner – neither cruelly and unusually nor otherwise."'" Id. (alteration in original) (quoting Iqbal v. Hasty, 490 F.3d 143, 168 (2d Cir. 2007)). Accordingly, Plaintiff's Eighth Amendment claim will be dismissed.

## D. Due Process Claim

Plaintiff brings a claim for due process violations. (Am. Cmplt. (Dkt. No. 45) at 19) Where "'a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, [however,] "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."'" Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 115 (2d Cir. 1995) (quoting Albright v. Oliver, 510 U.S. 266, 273 (1994) (plurality opinion)); Aretakis v. Durivage, 7 Civ. 1273, 2009 WL 249781, at *21 (N.D.N.Y. Feb. 3, 2009) ("Accepting that [plaintiff] was arrested and had to endure a criminal prosecution, those pretrial deprivations of liberty and other substantive due process rights were subsumed into the Fourth Amendment."). For example, "the Fourth Amendment is the proper source of constitutional protection for claims, such as malicious prosecution, that implicate a person's liberty interest in respect of criminal prosecutions (and, in particular, one's pretrial liberty)." Singer, 63 F.3d at 115. Where a due process claim is "based on the same conduct that gave rise to [a] plaintiff's . . . false arrest and malicious prosecution claims," the due process claim should be dismissed "as both duplicative and merit[]less." Osuna v. City of New York, 8 Civ. 4759 (JSR), 2009 WL 2356424, at *6 (S.D.N.Y. July 30, 2009); see Ambrose v. City of New York, 623 F. Supp. 2d 454, 474 n.9 (S.D.N.Y. Mar. 31, 2009) (dismissing procedural due process claim "because New York allows Plaintiff to sue in tort for

false arrest and malicious prosecution"). Here, Plaintiff's due process claim is duplicative of his false arrest, false imprisonment, malicious prosecution, and denial of fair trial claims.

To the extent that Plaintiff's due process claim is premised on the conditions of his confinement, as noted above, that claim is governed by the Due Process Clause of the Fourteenth Amendment. See Darnell, 849 F.3d at 29. Plaintiff alleges no facts that would support such a due process claim, however. The Amended Complaint pleads only that Plaintiff was in pre-trial detention for seventeen-and-a-half months. (Am. Cmplt. (Dkt. No. 45) at 20) Accordingly, this claim will be dismissed.

## E.    **Abuse of Process**

"In New York, 'a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse o[r] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'" Savino, 331 F.3d at 76 (quoting Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994)). "The crux of a malicious abuse of process claim is the collateral objective element." Douglas v. City of New York, 595 F. Supp. 2d 333, 344 (S.D.N.Y. 2009). "Merely alleging that a defendant lacked probable cause is not enough" to allege a collateral purpose. Blue v. City of New York, 16 Civ. 9990 (VSB), 2018 WL 2561023, at *8 (S.D.N.Y. June 4, 2018). Rather, "[t]o meet this element, a plaintiff must prove not that defendant acted with an improper motive, but rather an improper purpose – that is, 'he must claim that [the defendant] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution.'" Douglas, 595 F. Supp. 2d at 344 (quoting Savino, 331 F.3d at 76).

Here, while the Amended Complaint alleges in a conclusory fashion that the detectives knew that Plaintiff had not been observed at the scene of the crime (Am. Cmplt. (Dkt. No. 45) at 19); knew that Plaintiff had not used a bloody crowbar to commit the burglary (id.);

28

and that Rivera knew that Plaintiff did not commit the burglary (id.), the Amended Complaint does not set forth factual allegations supporting these claims. In any event, the Amended Complaint contains no factual allegations suggesting that the detectives acted to achieve an improper purpose. Accordingly, Plaintiff's abuse of process claim will be dismissed. See Blue, 2018 WL 2561023, at *8 ("Plaintiff rests his claim regarding abuse of process on the allegation that the DA Defendants and Williams arraigned Plaintiff on false charges, caused him to be held in custody, manufactured a false indictment against him, and elicited false testimony in order to 'retaliat[e] against plaintiff for filing complaints against them and to protect themselves from future law suits and loss of their jobs.' This is not, however, sufficient for an abuse of process claim, as it does not demonstrate that either Williams or the DA Defendants sought some collateral objective outside of the 'legitimate ends of the process.'" (quoting Dellutri v. Vill. of Elmsford, 895 F. Supp. 2d 555, 572 (S.D.N.Y. 2012)); Hoffman v. Town of Southampton, 893 F. Supp. 2d 438, 448 (E.D.N.Y. 2012) (abuse of process claim dismissed where "plaintiffs have failed to allege that defendants had a collateral purpose beyond pursuing, and prevailing in, plaintiffs' criminal prosecution"), aff'd sub nom. Peter L. Hoffman, Lotte, LLC v. Town of Southampton, 523 F. App'x 770 (2d Cir. 2013).

## F. Equal Protection Claim

The Amended Complaint brings a claim under the Equal Protection Clause. (See Am. Cmplt. (Dkt. No. 45) at 10)

> The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburn Living Ctr., [473 U.S. 432, 439 (1985).] "Proof that discriminatory intent was a motivating factor is required to show a violation of the Equal Protection Clause." Okin v. Village of Cornwall-on-Hudson Police Dept., 577 F.3d 415, 438 (2d Cir.2009) (citing Arlington Heights v. Metro Hous. Dev. Corp., 429 U.S. 252, 265-66 (1977)).

White v. City of New York, 206 F. Supp. 3d 920, 930 (S.D.N.Y. 2016). To the extent that Plaintiff intends to bring a selective prosecution claim, he must also show "the existence of similarly situated comparators," as "courts grant special deference to the executive branch in the performance of the 'core' executive function of deciding whether to prosecute." Pyke v. Cuomo, 258 F.3d 107, 109 (2d Cir. 2001); see also White, 206 F. Supp. 3d at 930 (same holding in Section 1983 case against NYPD).

Here, Plaintiff has not alleged any facts suggesting that the detectives acted with discriminatory animus towards him, nor has he pled any facts concerning "similarly situated comparators." Accordingly, Plaintiff's equal protection claim will be dismissed.

## IV.    THIS COURT DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION

Under 28 U.S.C. § 1367(c), "a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." Schaefer v. Town of Victor, 457 F.3d 188, 210 (2d Cir. 2006) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). "[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice." Tops Mkts., Inc. v. Quality Mkts., Inc., 142 F.3d 90, 103 (2d Cir. 1998) (citing Carnegie-Mellon Univ., 484 U.S. at 350) (emphasis omitted).

This case has not proceeded past the motion to dismiss stage, and there is no reason to deviate from that rule here. Accordingly, this Court will not exercise supplementary jurisdiction over Plaintiff's state law claims.

## V.    LEAVE TO AMEND

With respect to leave to amend, the Second Circuit has cautioned that district courts "'should not dismiss [a pro se complaint] without granting leave to amend at least once

30

when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)). "'Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend.'" Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002) (quoting Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993) (per curiam)). "One appropriate basis for denying leave to amend is that the proposed amendment is futile. . . . An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Id. (internal citations omitted).

Here, Plaintiff's claims against Codrington, Perry, and Whitt fail because of Eleventh Amendment immunity and absolute immunity, and the false arrest and false imprisonment claims against Rivera and Morales fail because they are time-barred. Amending these claims would thus be futile.

With respect to the Monell claim against Vance and the remaining claims against Rivera and Morales, however, it is not clear that amending these claims would be futile. Accordingly, Plaintiff may seek leave to file a Second Amended Complaint against these Defendants.

## CONCLUSION

For the reasons stated above, Defendants' motions to dismiss are granted in their entirety. The Clerk of Court will terminate the motions (Dkt. Nos. 81, 84). Any motion for leave to file a Second Amended Complaint will be submitted by October 10, 2018. The proposed Second Amended Complaint is to be attached as an exhibit to the motion.

The Clerk of Court is instructed to send a copy of this order by certified mail to

pro se Plaintiff Herman Crespo, 760 East 183rd St., Apt. 527, Bronx, NY 10460.

Dated: New York, New York
       September 18, 2018

SO ORDERED.

_Pauls Sardgphe_

Paul G. Gardephe
United States District Judge